FILED

2014 JAN -7  PM 3: 54

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
LOS ANGELES

BY: _____

1  **KATTEN MUCHIN ROSENMAN LLP**
Kristin L. Holland (SBN 187314)
2  kristin.holland@kattenlaw.com
Tami Kameda Sims (SBN 245628)
3  tami.sims@kattenlaw.com
2029 Century Park East, Suite 2600
4  Los Angeles, CA 90067-3012
Telephone:  310.788.4400
5  Facsimile:  310.788.4471

6  **KATTEN MUCHIN ROSENMAN LLP**
James J. Calder (*applying for pro hac vice*)
7  james.calder@kattenlaw.com
Mark T. Ciani (*applying for pro hac vice*)
8  mark.ciani@kattenlaw.com
575 Madison Avenue
9  New York, NY 10022-2585
Telephone:  212.940.8800
10  Facsimile:  212.940.8776

11  Attorneys for Plaintiff Retrophin, Inc.

12

13  **UNITED STATES DISTRICT COURT**

     **CENTRAL DISTRICT OF CALIFORNIA**

14  **SOUTHERN DIVISION**

15  RETROPHIN, INC., a Delaware     SACV14-00026-JLS (JPRx)
16  Corporation,                      CASE NO.

17            Plaintiff,            **COMPLAINT FOR:**
                                     1.  **RESTRAINT OF TRADE IN**
                                         **VIOLATION OF SECTION 1 OF**
18      vs.                              **THE SHERMAN ACT**
                                         **(15 U.S.C. § 1 ET SEQ.)**
19  QUESTCOR PHARMACEUTICALS,       2.  **MONOPOLIZATION IN**
    INC., a California Corporation,     **VIOLATION OF SECTION 2 OF**
20                                       **THE SHERMAN ACT**
              Defendant.                 **(15 U.S.C. § 2 ET SEQ.)**
21                                   3.  **ATTEMPTED**
                                         **MONOPOLIZATION IN**
22                                       **VIOLATION OF SECTION 2 OF**
                                         **THE SHERMAN ACT**
23                                       **(15 U.S.C. § 2 ET SEQ.)**
                                     4.  **UNLAWFUL MERGER IN**
24                                       **VIOLATION OF SECTION 7 OF**
                                         **THE CLAYTON ACT**
25                                       **(15 U.S.C. § 18 ET SEQ.)**
                                     5.  **VIOLATION OF CALIFORNIA**
26                                       **ANTITRUST LAWS**
                                     6.  **VIOLATION OF CALIFORNIA**
27                                       **UNFAIR COMPETITION LAWS**

28                                   **DEMAND FOR JURY TRIAL**

Plaintiff Retrophin, Inc. ("Retrophin"), as and for its complaint against Defendant Questcor Pharmaceuticals, Inc. ("Questcor"), alleges as follows:

## Nature of the Action

1. Questcor is a monopolist. It is the sole provider in the US of approved therapeutic preparations of adrenocorticotropic hormone ("ACTH"), a drug used to treat certain life threatening and often fatal diseases. Questcor's ACTH drug is sold under the brand name H.P. Acthar Gel ("Acthar"). The drug is not patented.

2. Questcor acquired the rights to Acthar in 2001. At the time, Acthar sold for $50 a vial or less. Since then, Questcor has raised the price to $28,000 – a 56,000% price increase.

3. Questcor is able to charge such an extortionate price for Acthar because it holds a monopoly in the US. Its monopoly exists for several reasons. First, Acthar is the only long acting ACTH therapeutic drug approved by the Food and Drug Administration ("FDA") for use in the US. Second, Acthar is the most effective and dominant first line treatment for Infantile Spasms, an often fatal disorder that causes epileptic type seizures in babies, toddlers and children under the age of 5. In addition, Questcor has obtained "Orphan Drug Designation" for Acthar from the FDA under the Orphan Drug Act, 21 USC §§301 *et seq.*, giving it the exclusive right to market Acthar – and its chemical equivalent – for use in treating Infantile Spasms. Third, Acthar is also the most commonly used treatment of last resort for patients suffering from Nephrotic Syndrome, a condition that results in excessive protein being secreted through the urine that destroys the kidneys and can lead to kidney failure. Treatments of last resort, as the term implies, are used for patients who do not respond to or cannot tolerate other therapies used to treat their illness.

4. In June of 2013, plaintiff Retrophin was poised to challenge Questcor's monopoly. It had negotiated an agreement to purchase from Novartis AG ("Novartis"), the rights to sell in the US a product called Synacthen, an ACTH drug that contains the same sequence of the first 24 amino acids that is found in Acthar.

Katten
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   While there are differences between Acthar and Synacthen – the two are not

2   chemically identical beyond the first 24 amino acids and they are produced differently

3   – Synacthen has been sold for years outside of the US for the treatment of Infantile

4   Spasms, Nephrotic Syndrome, Multiple Sclerosis and other diseases.  On information

5   and belief, it is not currently sold in the US because it has never been submitted to the

6   FDA for approval.

7       5.      Retrophin planned to obtain FDA approval to sell Synacthen in the US

8   and compete head to head against Questor by dramatically undercutting Questcor's

9   price for Acthar.  It had negotiated and was ready to sign an agreement to purchase the

10  US rights to Synacthen from Novartis.  The signing was scheduled for June 11, 2013.

11  The signing of the agreement was so imminent that a press release had been prepared

12  to announce the deal.

13      6.      On June 11, 2013, the day Retrophin was to sign its agreement with

14  Novartis, Questcor swept in and acquired the rights to Synacthen.  In so doing, it

15  preserved and entrenched its ACTH monopoly in the US and eliminated the

16  competitive threat posed by Retrophin's acquisition of Synacthen.  There was no

17  procompetitive aspect of Questcor's acquisition of Synacthen.

18      7.      When it acquired the rights to Acthar, Questcor did not make a

19  Premerger Notification Filing with the Department of Justice and the Federal Trade

20  Commission under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15

21  USC, §18a *et seq.*

22      8.      Questcor was quite aware, however, that its agreement with Novartis

23  raised serious antitrust questions.  The agreement provides that, if Questcor is forced

24  to divest its rights to Synacthen on antitrust grounds, Novartis will keep the entire $60

25  million that Questcor had paid it.  In addition, Questcor remains obligated to make all

26  future milestone payments owed to Novartis under that agreement – an amount in

27  excess of $75 million.  Questcor has accepted the entire economic risk – an amount in

28

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   excess of $135 million – that the agreement with Novartis would be deemed illegal

2   under the antitrust laws.

3       9.    Questcor's acquisition of Synacthen has delayed, and may completely

4   foreclose, Retrophin's entry into the markets defined below.  It will delay, and may

5   completely prevent, Retrophin from competing against Questcor.  Retrophin brings

6   this lawsuit to recover the damages it has incurred as a result of Questcor's

7   anticompetitive and monopolistic conduct.  It also seeks injunctive relief against

8   Questcor's continuation of such conduct.

9   <center>**The Parties**</center>

10       10.    Plaintiff Retrophin is organized and exists under the laws of Delaware.

11   Its principal place of business is located at 777 Third Avenue, 22nd Floor, New York,

12   New York 10017.  It also does business in California and Massachusetts.

13       11.    Retrophin is a biopharmaceutical company focused on the development,

14   acquisition and commercialization of drugs for the treatment of serious, catastrophic

15   or rare diseases for which there are currently no viable options for patients.  The

16   diseases on which Retrophin focuses are often considered "orphan" diseases because

17   they affect fewer than 200,000 patients in the United States.  Retrophin has acquired

18   and is building a pipeline of innovative product candidates for several catastrophic

19   diseases, including: Focal Segmental Glomerulosclerosis, a kidney disease;

20   Pantothenate Kinase-Associated Neurodgeneration; and Duchenne Muscular

21   Dystrophy.

22       12.    Defendant Questcor is a corporation organized and existing under the

23   laws of the State of California.  It maintains its principal place of business in

24   Anaheim, California.

25   <center>**Jurisdiction and Venue**</center>

26       13.    Retrophin brings this action under Sections 4 and 16 of the Clayton Act,

27   15 U.S.C. §§15 and 26, to recover treble damages and costs of suit, including

28   reasonable attorneys' fees, and for injunctive relief, for injuries suffered by Retrophin

<center>3</center>

1    alleged herein and arising from Questcor's continuing violations of Section 1 of the

2    Sherman Act, 15 U.S.C. § 1, Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section

3    7 of the Clayton Act, 15 U.S.C. § 18.  Jurisdiction for this action is invoked under

4    Sections 4 and 16 of the Clayton Act, as amended, 15 U.S.C. §§ 15 and 26, and 28

5    U.S.C. §§ 1331 and 1337(a).

6        14.    Additionally, this Court has diversity jurisdiction over this action

7    pursuant to 28 U.S.C. § 1332(a) because the controversy exceeds the sum or value of

8    $75,000 and Retrophin and Questcor are citizens of different states.  This Court has

9    supplemental jurisdiction over Retrophin's state law claims pursuant to 28 U.S.C. §

10   1367(a).

11       15.    Venue in this Court exists by virtue of Sections 4 and 12 of the Clayton

12   Act, as amended, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(c).  Defendant

13   Questcor is found, has agents, transacts and is doing business in this District, and the

14   unlawful activities complained of herein were carried on, in substantial part, within

15   this District.

16       16.    Defendant is subject to personal jurisdiction in this Court because it

17   resides in this District and transacts business in this District.

## Trade and Commerce

18

19       17.    The pharmaceutical products at issue in this case are sold in Interstate

20   Commerce, and the unlawful activities alleged in this Complaint have occurred in, and

21   have had and will have, a substantial effect upon, Interstate Commerce.

## The Relevant Markets

22

23       18.    There are a number of separate relevant product markets at issue in this

24   case.  They include:  (a) the market for ACTH therapeutic drugs (the "ACTH

25   Therapeutic Drug Market"); (b) the market for first-line drug treatments for Infantile

26   Spasms (the "Infantile Spasms Market"); and (c) the market for treatments of last

27   resort for Nephrotic Syndrome for those patients who do not respond to or cannot

28   tolerate primary and secondary treatments for that disease (the "Nephrotic Syndrome

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Market"). The relevant geographic markets for each of these three relevant product markets is the United States, since drugs available in any of these markets are subject to FDA regulation. The ACTH Therapeutic Drug, Infantile Spasms, and Nephrotic Syndrome Markets are collectively referred to as the "Relevant Markets."

### The ACTH Therapeutic Drug Market

19.     ACTH is a drug used to treat certain life threatening and often fatal diseases, including Infantile Spasms and Nephrotic Syndrome. It is a polypeptide tropic hormone produced and secreted by the anterior pituitary gland. In the human body, ACTH activates the Melanocortin System and is referred to as a "Melanocortin agonist." The Melanocortin System affects a wide array of bodily functions ranging from skin pigmentation, inflammation, energy homeostasis and sexual function. As a consequence, ACTH can be used as a therapy for a variety of illnesses resulting from improper functioning of the Melanocortin System, including Infantile Spasms and Nephrotic Syndrome. There is no reasonable interchangeability between drug therapies used to treat other diseases and ACTH drug therapies used to stimulate the Melanocortin System.

20.     Acthar is an ACTH. It is the only FDA approved long-acting ACTH available in the US. It is also the only FDA approved long-acting melanocortin agonist available in the US.

21.     ACTH products have been approved for use as diagnostic agents which are used to test for the presence of certain conditions or diseases. However, those products are short acting and are not used as therapies in treating illnesses.

22.     Consumers faced with a small but significant non-transitory increase in the price of ACTH therapeutic drugs, cannot and will not shift to other classes of drugs such that the increase in price will be rendered unprofitable. This is evidenced by the fact that Questcor, the only supplier of ACTH for therapeutic purposes in the US, has raised the price of a vial of Acthar to $28,000 and is able to maintain that price.

23.     FDA regulation and the difficulty of developing and manufacturing ACTH based therapeutic drugs reduce or eliminate any "supply elasticity" whereby manufacturers of other drug therapies convert their existing manufacturing facilities to the manufacture of ACTH therapeutic drugs.

24.     The relevant geographic market for ACTH therapeutic drugs is national because therapeutic ACTH drugs cannot be sold in the US without FDA approval.

**The Infantile Spasms Market**

25.     Babies and little children suffering from Infantile Spasms must have treatments that cure that affliction.  Without it they suffer from epileptic type seizures and other symptoms of the disease.  If untreated, they may suffer permanent brain or neurological damage and may develop other seizure disorders.  The disease can be fatal.  Only therapies that treat Infantile Spasm Syndrome can meet the medical needs of these patients.  Therapies for other diseases do not cure or control Infantile Spasms and are not substitutes for Infantile Spasm therapeutics.  There is no reasonable interchangeability between drug therapies used to treat other diseases and drug therapies used to treat children with Infantile Spasms.

26.     Consumers faced with a small but significant non-transitory increase in the price of therapeutic drugs to treat Infantile Spasms, cannot and will not shift to other drug treatments for Infantile Spasms such that the increase in price will be rendered unprofitable.  This is evidenced by the fact that Questcor has raised the price of a vial of Acthar to $28,000 and is able to maintain that price.

27.     There are also regulatory entry barriers that limit the Relevant Market to first line therapies for Infantile Spasms.  In 2010, Questcor obtained from the FDA, "Orphan Drug designation" for Acthar for Infantile Spasms under the Orphan Drug Act.  Despite the fact that Acthar is not patented, the Orphan Drug designation gives Questcor a seven year exclusive right to sell Acthar, and its chemical equivalent, for Infantile Spasms with immunity from generic competition.  Questcor's exclusive marketing right extends to 2017.  Therapies that are excluded by Acthar's Orphans

1   Drug Designation (generic versions of Acthar) cannot be labeled or marketed for the

2   treatment of Infantile Spasms.

3       28.   FDA regulation and the difficulty of developing and manufacturing

4   treatments for Infantile Spasms preclude any "supply elasticity" whereby

5   manufacturers of other drug therapies convert their manufacturing facilities to the

6   manufacture of Infantile Spasm therapies.

7       29.   The relevant geographic market for first line Infantile Spasm drug

8   therapies is national because therapeutic drugs cannot be marketed in the US for

9   Infantile Spasms without FDA approval.

10  **The Nephrotic Syndrome Market**

11      30.   Nephrotic Syndrome is a condition in which excessive amounts of

12  protein pass through the kidneys and are secreted through the urine.  This results in

13  kidney damage and can lead to kidney failure.  Nephrotic Syndrome is treated on a

14  first and second line basis with corticosteroids, such as Prednisone, or

15  immunosuppressant drugs.  In some patients the disease does not respond to these

16  treatments and in others the patient cannot tolerate the drugs' side effects.  In such

17  cases, ACTH (Acthar) is the primary and dominant treatment of last resort.  Only

18  therapies that treat Nephrotic Syndrome effectively can meet the medical needs of

19  Nephrotic Syndrome patients who do not respond to or cannot tolerate traditional first

20  and second line therapies for that illness.  Therapies for other diseases do not cure or

21  control Nephrotic Syndrome and are not substitutes for last resort treatments for

22  Nephrotic Syndrome.  There is no reasonable interchangeability between drug

23  therapies used to treat other diseases and drug therapies used to treat victims of

24  Nephrotic Syndrome.

25      31.   Consumers faced with a small but significant non-transitory increase in

26  the price of last resort therapeutic drugs to treat Nephrotic Syndrome cannot and will

27  not shift to other drug treatments such that the increase in price will be rendered

28

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Katten

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax
kattenlaw.com

1  unprofitable.  This is evidenced by the fact that Questcor has raised the price of a vial

2  of Acthar to $28,000 and is able to maintain that price.

3       32.     There are also regulatory entry barriers that limit the Relevant Market to

4  therapies of last resort for Nephrotic Syndrome.  Therapies for other conditions cannot

5  be marketed for the treatment of Nephrotic Syndrome without FDA approval.  In

6  addition, it is particularly difficult for the maker of a generic drug to obtain FDA

7  approval when it is trying to prove that its synthetically manufactured product, which

8  is manufactured in a laboratory setting, is the biopharmaceutical equivalent of a drug

9  such as Acthar which is produced from animals.

10      33.     FDA regulation and the difficulty of developing and manufacturing

11  treatments for Nephrotic Syndrome preclude any "supply elasticity" whereby

12  manufacturers of other drug therapies convert their manufacturing facilities to the

13  manufacture of Nephrotic Syndrome therapies.

14      34.     The relevant geographic market for therapies of last resort for Nephrotic

15  Syndrome is national because such therapies cannot be marketed in the US for

16  Nephrotic Syndrome without FDA approval.

17                **Questcor Has Market and Monopoly Power in the Relevant Markets**

18      35.     There are no meaningful substitutes for Acthar or ACTH in the Relevant

19  Markets.  Nor are manufacturers of other pharmaceutical products able to shift their

20  production to the manufacture of Acthar or other ACTH products.  Even if they were

21  able to do so, they could not sell those products without first obtaining FDA approval.

22  Questcor has market and monopoly power in all of the Relevant Markets.

23      36.     Questcor's monopoly power in all three of the Relevant Markets is

24  further evidenced by a single price increase that it imposed in 2007.  In that year,

25  Questcor raised the price of Acthar from $1,650 per vial to $23,000 per vial, an

26  overnight increase of over 1,300%.  Questcor's ability to make that price increase

27  "stick" is conclusive evidence of its market and monopoly power.

28

### The ACTH Therapeutic Drug Market

37.    In the ACTH Therapeutic Drug Market, Acthar is the only FDA approved long acting ACTH therapeutic drug available to consumers in the United States.

38.    Questcor's market and monopoly power in the ACTH Therapeutic Drug Market is further protected by the fact that other chemical variations of ACTH for use as therapeutic drugs require FDA approval for sale in the United States.

39.    Questcor effectively has 100% of the market for ACTH Therapeutic Drugs.  It has market and monopoly power in that market which is dramatically demonstrated by its continued ability to charge $28,000 for a vial of Acthar.

### The Infantile Spasms Market

40.    In the Infantile Spasms Market, Acthar is considered the "gold standard" of treatment.

41.    Questcor's market and monopoly power in the Infantile Spasms Market is protected by the Orphan Drug Designation that protects Questcor from generic competition to Acthar.  Its monopoly position is further protected by the fact that alternative therapies, that would not be precluded by the Orphan Designation, require FDA approval if they are to be marketed as therapies for Infantile Spasms.

42.    Questcor admits that it has more than 50% share of the Infantile Spasms Market and its actual market share may be far greater.  Questcor's market and monopoly power in the Infantile Spasms Market is demonstrated dramatically by its continued ability to charge $28,000 for a vial of Acthar.

### The Nephrotic Syndrome Market

43.    In the Nephrotic Syndrome Market, Acthar is the primary and dominant treatment of last resort for Nephrotic Syndrome patients who do not respond to or cannot tolerate first or second line treatments for that disease.

Katten

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax
KattenMuchinRosenman LLP

44.     Questcor's market and monopoly power in the Nephrotic Syndrome Market is further protected by the fact that alternative drug therapies require FDA approval if they are to be marketed as therapies for Nephrotic Syndrome.

45.     Questcor's market and monopoly power in the Nephrotic Syndrome Market is demonstrated dramatically by its continued ability to charge $28,000 for a vial of Acthar.

**Retrophin's Acquisition of Synacthen Threatened Questcor's Monopoly**

46.     Synacthen is an ACTH derivative that has been sold for years outside of the US and has been used successfully to treat patients with Infantile Spasms and Nephrotic Syndrome in other countries.  It has not been commercially developed in the US and it has not been submitted to the FDA for approval for therapeutic use.

47.     Synacthen is similar, but not chemically identical, to Acthar.  Both drugs share the identical sequence of the first 24 amino acids in their respective molecules.  This sequence of amino acids gives both drugs their therapeutic properties.  Acthar, however, has a longer amino acid chain.  The two drugs are also produced in very different ways.  Acthar is "porcine derived."  It is extracted from the pituitary gland found in the brains of slaughtered pigs.  Synacthen, by contrast, is synthetically manufactured in a laboratory setting.  These differences give Synacthen three competitive advantages over Acthar.  First, Synacthen is less expensive to manufacture.  Second, because it is manufactured in a controlled setting, the product is less susceptible to variation.  Third, consumers are more comfortable knowing that the drugs they are taking – or giving to their infants – are produced in a sterile environment rather than being derived from slaughtered animals.

48.     Retrophin planned to purchase the rights to Synacthen, obtain FDA approval for its use as a therapeutic, and enter the Relevant Markets in competition with Questcor.  Retrophin planned to price Synacthen at a fraction of the price charged by Questcor and use its competitive pricing and Synacthen's other competitive advantages to take substantial market share from Acthar.

49.    In the late summer of 2012, Retrophin entered negotiations with Novartis to purchase the rights to manufacture and sell Synacthen in the US. After approximately nine months of due diligence and negotiations, Retrophin and Novartis agreed to terms on which Retrophin would acquire the rights to Synacthen. Final documents had been prepared and were merely awaiting the parties' signatures. The signing was set for June 11, 2013. Retrophin had prepared a press release announcing the deal.

50.    In anticipation of the transaction, Retrophin had prepared a plan to obtain regulatory approvals for, and sell Synacthen. It devised a strategy for going directly to Phase III clinical drug trials in order to obtain FDA approval for the use of Synacthen to treat Infantile Spasms and Nephrotic Syndrome. It also planned to file a Treatment Investigational New Drug Application which, if approved by the FDA, would have allowed Retrophin to offer Synacthen to patients for free while it was awaiting FDA approval to market Synacthen for Infantile Spasms and Nephrotic Syndrome. This would have given patients immediate relief from Questcor's pricing and would have developed substantial goodwill for Retrophin and Synacthen in both the patient and medical communities. Retrophin believed that the history of Synacthen's use in other countries would aid it in obtaining FDA approval.

51.    In anticipation of the product launch, Retrophin had put in place a clinical apparatus to conduct clinical trials necessary to obtain FDA approval. It planned to begin to market Synacthen upon FDA approval.

52.    Given its expertise as a biopharmaceutical company focusing on rare diseases, Retrophin was ready, willing and able to enter the Relevant Markets with Synacthen subject to FDA approval. Retrophin's entry into the Relevant Markets would have broken Questcor's monopoly. The result would have been unambiguously procompetitive. Retrophin's entry into the market and its introduction of Synacthen as an alternative to Acthar would have benefitted all participants in the markets – other than Questcor. Prices to patients and payors would have dropped;

1   patients who were unable to pay for the drug would have been able to get it; other

2   patients who were forced by Questcor's pricing to limit their dosages of the drug

3   would have been able to take the medically prescribed amounts; and Retrophin would

4   have earned substantial profits from sales of its product.

5   **Questcor Illegally Acquires Synacthen to Preserve its Monopoly**

6          53.   Faced with a direct threat to its monopoly, Questcor acted to preserve its

7   market dominance and its ability to charge extraordinary prices for Acthar.  It swept in

8   and secretly negotiated a deal to buy the rights to Synacthen from Novartis.

9          54.   On June 11, 2013, the very day that Retrophin and Novartis were to sign

10   their agreement, Questcor acquired the rights to Synacthen.  The acquisition was

11   closed on the day of the announcement.  Questcor made no Premerger Notification

12   filing with the Department of Justice and the Federal Trade Commission under the

13   Hart Scott Rodino Act Antitrust Improvements Act of 1976.  Nor did it observe the

14   waiting period provided by the Hart Scott Act before closing the acquisition.

15          55.   As part of the Agreement, the entire risk of an antitrust challenge to the

16   transaction is borne by Questcor.  The Agreement between Novartis and Questcor

17   provides that Novartis receives the full consideration it is entitled to from Questcor

18   even if the US antitrust enforcement agencies (The Federal Trade Commission or the

19   Department of Justice) force Questcor to divest its rights in Synacthen.  If such a

20   divestiture occurs, the Agreement provides that Novartis keeps the entire $60 million

21   that Questcor has paid it and Questcor will make all future milestone payments

22   required by the Agreement – an amount in excess of $75 million.  In short, the

23   acquisition of the rights to Synacthen was so important to Questcor that it put at least

24   $135 million at risk to keep Synacthen out of Retrophin's hands.  There was no

25   procompetitive aspect of Questcor's acquisition of Synacthen.

26          56.   Questcor's acquisition of the rights to Synacthen unreasonably restrained

27   trade, maintained Questcor's monopolies and may result in a substantial lessening of

28   competition in the Relevant Markets.  As a result of Questcor's acquisition of the

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1  rights to Synacthen, prices to patients and payors for Acthar will remain at monopoly

2  levels; patients who are unable to pay for the drug will not be been able to get it;

3  other patients who are forced by Questcor's pricing to limit their dosages of the drug

4  will not be able to take the medically prescribed amounts; and Retrophin will not earn

5  the substantial profits it expected to earn from selling Synacthen at a fraction of the

6  price Questcor charges for Acthar.

7  <u>**Retrophin Is Continuing to Try to Enter the Relevant Markets**</u>

8      57.    Despite Questcor's anticompetitive and monopolistic conduct, Retrophin

9  is continuing to try to enter the Relevant Product Markets. To that end, it has taken

10  the highly unusual step of trying to create from scratch a drug – that it has designated

11  as RE-034 – that will match Synacthen. Retrophin is endeavoring to create a new

12  formulation of the drug that will incorporate the same active pharmaceutical

13  ingredient used in Synacthen and match Synacthen's therapeutic effects for patients

14  suffering from Infantile Spasms and Nephrotic Syndrome.

15      58.    Retrophin's efforts to develop RE-034 will take substantial time and

16  money and will require FDA approval. It will also require that the drug successfully

17  complete both Phase I and Phase III clinical trials for both Infantile Spasms and

18  Nephrotic Syndrome. There is no guarantee that RE-034 will succeed in the clinical

19  trials or that Retrophin will succeed in obtaining FDA approval or entering the

20  Relevant Markets.

21      59.    Entering the Relevant Markets through RE-034 is more difficult, risky

22  and time consuming than entering those markets through Synacthen. Synacthen is an

23  existing product that has been manufactured and used outside of the US for decades in

24  the treatment of a variety of illnesses, including Infantile Spasms and Nephrotic

25  Syndrome. The owner of the rights to Synacthen has the information, know-how and

26  ability to manufacture the drug and has decades of clinical data from outside the

27  United States that can be used to facilitate and speed the regulatory approval process

28

1  in the US.  Retrophin will need to develop all of that knowledge from scratch in

2  seeking to enter the Relevant Markets with RE-034.

3      60.    Entering the Relevant Markets through RE-034 will be more difficult,

4  less likely to succeed and take longer than entry into those markets through the

5  acquisition of Synacthen.  Questcor's conduct has delayed, and may entirely foreclose,

6  Retrophin from entering the Relevant Markets.

## Questcor Has Damaged Competition in the Relevant Markets and Has Caused

## Retrophin to Suffer Both Injury in Fact and Antitrust Injury

9      61.    Questcor's unlawful acquisition of the rights to Synacthen has foreclosed

10  or delayed Retrophin from entering the Relevant Markets, has restrained trade, and

11  has preserved and entrenched Questcor's monopoly and may substantially lessen

12  competition.  As a result, competition in the Relevant Markets has been damaged and

13  Retrophin has been injured.  Those injuries are intertwined and inseparable.

14  Excluding or delaying Retrophin from entering the Relevant Markets with Synacthen

15  was and is an integral aspect of Questcor's anticompetitive conduct.

16      62.    Retrophin has suffered and continues to suffer injury in fact from

17  Questcor's acquisition of the rights to Synacthen and the preservation of its monopoly.

18      63.    Retrophin has suffered and continues to suffer antitrust injury from

19  Questcor's acquisition of the rights to Synacthen and the preservation of its monopoly.

20  Retrophin has been injured directly as a result of Questcor's unlawful conduct.

21  Retrophin is a potential entrant into the Relevant Markets and, but for Questcor's

22  unlawful conduct, would be entering those markets with Synacthen.  There are no

23  aspects of Questcor's conduct that are beneficial to competition.  Retrophin's injury is

24  an integral aspect of Questcor's unlawful conduct; flows from that which renders

25  Questcor's conduct unlawful; and its injury is of the type the antitrust laws were

26  intended to prevent.

27

28

Katten
KattenMuchinRosenmanllp
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

## FIRST CAUSE OF ACTION

## (COMBINATION IN THE RESTRAINT OF TRADE IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT)

64.   Retrophin repeats and realleges the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

65.   In acquiring the rights to Synacthen, Questcor entered into a contract, conspiracy or combination that unreasonably restrains trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

66.   Questcor's acquisition of the rights to Synacthen unlawfully and unreasonably restrains trade by preventing or delaying Retrophin from entering the Relevant Markets and challenging Questcor's market power in those markets.

67.   Questcor's violation of Section 1 of the Sherman Act has caused, and will cause, damages to Retrophin in an amount to be determined at trial, such damages to be trebled in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15.

68.   Questcor's unlawful conduct is ongoing, irreparably injures Retrophin, harms the public interest, and unless restrained will continue.  Retrophin has no adequate remedy at law.

## SECOND CAUSE OF ACTION

## (MONOPOLIZATION IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT)

69.   Retrophin repeats and realleges the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

70.   Questcor has monopoly power in the Relevant Markets.  In acquiring the rights to Synacthen in the US, Questcor has intentionally acted to maintain and entrench its monopoly position in Relevant Markets, and has done so, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    71.    Questcor's violation of Section 2 of the Sherman Act has caused, and

2  will cause, damages to Retrophin in an amount to be determined at trial, such damages

3  to be trebled in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15.

4    72.    Questcor's unlawful conduct is ongoing, irreparably injures Retrophin,

5  harms the public interest, and unless restrained will continue.  Retrophin has no

6  adequate remedy at law.

### THIRD CAUSE OF ACTION

### (ATTEMPTED MONOPOLIZATION IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT)

10    73.    Retrophin repeats and realleges the allegations set forth in paragraphs 1

11  through 72 as if fully set forth herein.

12    74.    In acquiring the rights to Synacthen, Questcor has engaged in

13  monopolistic and anticompetitive conduct with the specific purpose and intent of

14  monopolizing the Relevant Markets in violation of Section 2 of the Sherman Act, 15

15  U.S.C. § 2.

16    75.    The sole purpose of Questcor's acquisition of the rights to Synacthen is

17  to enable Questcor to gain or maintain a monopoly position in the Relevant Markets.

18    76.    A dangerous probability exists that Questcor has succeeded, and if not

19  restrained, will continue to succeed in monopolizing the Relevant Markets.

20    77.    Questcor's acts of attempted monopolization has unlawfully prevented

21  and delayed Retrophin from entering the Relevant Markets and otherwise injure

22  competition in those markets by reducing choice, inflating prices, and lessening

23  innovation.

24    78.    Questcor's violation of Section 2 of the Sherman Act has caused, and

25  will cause, damages to Retrophin in an amount to be determined at trial, such damages

26  to be trebled in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15.

27

28

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    79.    Questcor's unlawful conduct is ongoing, irreparably injures Retrophin,

2  harms the public interest, and unless restrained will continue. Retrophin has no

3  adequate remedy at law.

## FOURTH CAUSE OF ACTION

## (UNLAWFUL MERGER IN VIOLATION OF SECTION 7 OF THE CLAYTON ACT)

7    80.    Retrophin repeats and realleges the allegations set forth in paragraphs 1

8  through 79 as if fully set forth herein.

9    81.    Questcor's acquisition of the rights to Synacthen is likely to substantially

10  lessen competition in interstate trade and commerce in violation of Section 7 of the

11  Clayton Act, 15 U.S.C. § 18.

12    82.    Questcor's acquisition of the rights to Synacthen is likely to result in a

13  substantial lessening of competition in the Relevant Markets.

14    83.    Questcor's violation of Section 7 of the Clayton Act has caused, and will

15  cause, damages to Retrophin in an amount to be determined at trial, such damages to

16  be trebled in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15.

17    84.    Questcor's unlawful conduct is ongoing, irreparably injures Retrophin,

18  harms the public interest, and unless restrained will continue. Retrophin has no

19  adequate remedy at law.

## FIFTH CAUSE OF ACTION

## (VIOLATION OF CALIFORNIA ANTITRUST LAWS)

22    85.    Retrophin repeats and realleges the allegations set forth in paragraphs 1

23  through 84 as if fully set forth herein.

24    86.    In acquiring the rights to Synacthen, Questcor entered into and engaged

25  in a continuing unlawful trust in restraint of the trade and commerce described above

26  in violation of the California antitrust laws referenced below. Questcor has acted in

27  violation of these laws in an effort to maintain, entrench, and/or create a monopoly,

28

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    and otherwise injure competition in the Relevant Markets.  Questcor's conduct

2    substantially affected commerce in California.

3        87.    In acquiring the rights to Synacthen in the US, Questcor has maintained

4    and entrenched its monopoly position in the Relevant Markets.

5        88.    Questcor's acquisition of the rights to Synacthen is likely to result in a

6    substantial lessening of competition in the Relevant Markets.

7        89.    By reason of the foregoing, Questcor violated California's Cartwright

8    Act, California Business and Professions Code §§ 16720 *et seq.*

9        90.    Questcor's violation of California's Cartwright Act, California Business

10   and Professions Code §§ 16720 *et seq.* has caused, and will cause, damages to

11   Retrophin in an amount to be determined at trial, with such damages to be trebled.

12       91.    Questcor's unlawful conduct is ongoing, irreparably injures Retrophin,

13   harms the public interest, and unless restrained will continue.  Retrophin has no

14   adequate remedy at law.

15                          **SIXTH CAUSE OF ACTION**

16           **(UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE**

17                          **§ 17200 *ET SEQ.*)**

18       92.    Retrophin repeats and realleges the allegations set forth in paragraphs 1

19   through 91 as if fully set forth herein.

20       93.    California Unfair Competition Law, Business and Professions Code

21   Section 17200 *et seq.*, provides that "unfair competition shall mean and include any

22   unlawful, unfair or fraudulent business act."

23       94.    Questcor's conduct as alleged herein meets the "unlawfulness" prong of

24   California Business and Professions Code §§ 17200 *et seq.*  Questcor has committed

25   and continues to commit unlawful business practices by illegally acquiring the rights

26   to Synacthen and engaging in anticompetitive and monopolistic conduct in violation

27   of antitrust laws.

28

**Katten**
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

95.     Questcor's conduct as alleged herein also meets the "unfair" prong of California Business and Professions Code §§ 17200 *et seq.* Questcor's anticompetitive and monopolistic conduct harms the public interest, threatens an incipient violation of an antitrust law and/or violates the policy or spirit of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

96.     Pursuant to California Business and Professions Code § 17203, Retrophin seeks the disgorgement of Questcor's profits earned by its unlawful and/or unfair business practices to the extent it constitutes restitution to Retrophin.

97.     Pursuant to California Business and Professions Code § 17203, Retrophin seeks an order of this court enjoining Questcor from continuing to engage, use, or employ the unlawful and/or unfair business practices complained of herein.

98.     Questcor's wrongful conduct has caused and, if it continues, will continue to cause irreparable harm to Retrophin that cannot be fully compensated by money and for which Retrophin has no adequate remedy at law. Retrophin is thus entitled to permanent injunctive relief preventing Questcor from continuing to engage in the conduct alleged in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Retrophin respectfully demands judgment against Questcor:

A.     DECLARING that Questcor's acquisition of the rights to Synacthen is an unlawful contract, combination or conspiracy in restraint of trade in violation of Section 1 of the Sherman Act;

B.     DECLARING that Questcor's acquisition of the rights to Synacthen constitutes unlawful monopolization of the Relevant Markets in violation of Section 2 of the Sherman Act;

C.     DECLARING that Questcor's acquisition of the rights to Synacthen constitutes an unlawful attempt to monopolize the Relevant Markets in violation of Section 2 of the Sherman Act;

1    D.      DECLARING that Questcor's acquisition of the rights to Synacthen

2    constitutes an acquisition that may result in a substantial lessening of competition in

3    the Relevant Markets in violation of Section 7 of the Clayton Act;

4    E.      DECLARING that Questcor's acquisition of the rights to Synacthen

5    constitutes an unlawful trust in restraint of trade and commerce in violation of

6    California Business and Professions Code §§ 16720 *et seq.*;

7    F.      DECLARING that Questcor's acquisition of the rights to Synacthen

8    constitutes unfair competition in violation of California Business and Professions

9    Code § 17200 *et seq.*;

10    G.      PERMANENTLY ENJOINING Questcor from enforcing or maintaining

11    its Rights to Synacthen under its agreement with Novartis or any similar formal or

12    informal agreement;

13    H.      PERMANENTLY ENJOINING Questcor from engaging in further

14    anticompetitive conduct in violation of Section 1 of the Sherman Act;

15    I.      PERMANENTLY ENJOINING Questcor from engaging in further

16    anticompetitive conduct in violation of Section 2 of the Sherman Act;

17    J.      PERMANENTLY ENJOINING Questcor from engaging in further

18    anticompetitive conduct in violation of Section 7 of the Clayton Act;

19    K.      PERMANENTLY ENJOINING Questcor from engaging in further

20    anticompetitive conduct in violation of California Business and Professions Code §§

21    16720, *et seq.*;

22    L.      PERMANENTLY ENJOINING Questcor from engaging in further

23    unlawful and/or unfair business practices in violation of California Business and

24    Professions Code § 17200 *et seq.*;

25    M.      DISGORGING any profits generated by Questcor as a result of its

26    unlawful and/or unfair business practices to the extent it constitutes restitution to

27    Retrophin;

28

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1      N.    AWARDING Retrophin damages in an amount to be proved at trial, such

2  damages to be trebled, including its costs and attorneys' fees, pursuant to Section 4 of

3  the Clayton Act, 15 U.S.C. § 15 and/or California's Cartwright Act, California

4  Business and Professions Code §§ 16720, *et seq.*;

5      O.    AWARDING Retrophin its costs, expenses and attorneys' fees incurred

6  in connection with the action;

7      P.    AWARDING Retrophin interest to the maximum extent permitted by

8  law; and

9      Q.    GRANTING Retrophin such other and further relief as this Court deems

10  just and proper.

11  Dated: January 7, 2014             KATTEN MUCHIN ROSENMAN LLP

12

13                               By: _____

14

15                              Kristin L. Holland
                           Attorneys for Plaintiff Retrophin, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2          Retrophin hereby demands a trial by jury on all of its claims and causes of

3     action.

4

5     Dated: January 7, 2014                    KATTEN MUCHIN ROSENMAN LLP

6

7                                               By: _____

8                                                   Kristin L. Holland
                                                    Attorneys for Plaintiff Retrophin, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Josephine L. Staton_____ and the assigned Magistrate Judge is _____Jean P. Rosenbluth_____ .

The case number on all documents filed with the Court should read as follows:

### 8:14-cv-00026-JLS(JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____January 7, 2014_____
Date

By  APEDRO _____
Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| ☐ Western Division<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | ☒ Southern Division<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | ☐ Eastern Division<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18 (08/13)                     NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| Retrophin, Inc. | Questcor Pharmaceuticals, Inc. |

| (b) County of Residence of First Listed Plaintiff  New York, NY | County of Residence of First Listed Defendant  Orange, CA |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.<br>Katten Muchin Rosenman LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA 90067-3012<br>310-788-4400 | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.<br><br>N/A |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ Over $75k, TBD

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Plaintiff is suing defendant for entering an illegal agreement and engaging in conduct that violates federal and state antitrust and competition laws, 15 U.S.C. §§ 1, 2, 18, and California Business and Professions Code §§ 16720, et seq, California Business and Professions Code §§ 17200, et seq

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☒ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number:  CV14-00026 |
|---|---|

CV-71 (11/13)     **CIVIL COVER SHEET**     Page 1 of 3

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII.  VENUE:**  Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no," go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br><br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br><br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes  ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true?  If so, check the one that applies:**

☒ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D,  below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D,  below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Southern Division |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed **in this court** that are related to the present case?  ☒ NO   ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**   _K. Holland_   DATE:  1/7/2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |